## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES BRYAN WATSON | ) | Case No.  13-17715 RAG |
| HEATHER MARIE WATSON | ) | (Chapter 7) |
| a/k/a HEATHER MARIE GUY | ) | |
| | ) | |
| Debtors | ) | |
| _____ | ) | |
| OLD REPUBLIC NATIONAL | ) | |
| TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 13-_____ RAG |
| JAMES BRYAN WATSON and | ) | |
| HEATHER MARIE WATSON | ) | |
| a/k/a HEATHER MARIE GUY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT

Plaintiff, Old Republic National Title Insurance Company ("Old Republic" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for Non-Dischargeability of Debt against the Debtors, James Bryan Watson ("Mr. Watson") and Heather Marie Watson a/k/a Heather Marie Guy ("Mrs. Watson," together with Mr. Watson, the "Debtors"), and in support thereof states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523(a).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.	On or about May 2, 2013 (the "Petition Date"), the Debtors filed a Chapter 7 Petition in this Court.

4.	This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

**Facts**

5.	This case arises out of numerous fraudulent acts and breaches of fiduciary duties of the Debtors in connection with the operations of their former company, American Dream Title, Inc. ("American Dream"), a real estate title, settlement and escrow company.  As described hereinafter, from February 15, 2009 through October 31, 2010, American Dream was a policy-issuing agent of Old Republic for the limited purposes of issuing title insurance commitments and policies.  Debtors were the guarantors of the obligations of American Dream to Old Republic and were appointed as authorized title agents of American Dream.  Old Republic and American Dream were parties to a policy-issuing agency agreement, which required American Dream to, among other things, (i) properly issue title insurance commitments in accordance with Old Republic underwriting standards, (ii) timely record documents to be insured by Old Republic, (iii) properly receive and disburse funds delivered to it in escrow to complete real estate closings to be insured by Old Republic, and (iv) issue title insurance policies after properly recording documents to be insured by Old Republic.  By and through the Debtors, American Dream wholly failed to comply with its obligations under the policy-issuing agency agreement and applicable law with respect to the handling of escrow funds and the recording of documents to be insured by Old Republic.  American Dream, by and through the Debtors, failed to record instruments executed at closings (including deeds and/or deeds of trust) to be insured by Old Republic after receiving in escrow funds from the parties to the closing to record the necessary instruments and

to disburse the escrow funds as agreed and authorized pursuant to instructions and approved HUD-1 settlement statements. Following these failures, numerous title claims were filed against Old Republic by its insureds. Ultimately, Old Republic determined that at least fourteen (14) original deeds and/or deeds of trust executed at closings handled by American Dream and that were to be insured by Old Republic were never recorded in the land records and that American Dream no longer held the funds in escrow deposited by the parties to be used to record the instruments. In fact, instead of recording those deeds and/or deed of trust and/or retaining the funds from closings with which to pay the necessary recordation fees, the Debtors converted those escrow funds and used those funds for their personal benefit. Prior to the Petition Date, Old Republic obtained a state court judgment against American Dream and the Debtors in the amount of $95,207.30 on account of losses sustained by reason of the Debtors wrongful actions. By this Complaint, Old Republic seeks a determination that the $95,207.30 judgment is non-dischargeable in accordance with 11 U.S.C. §§ 523(a)(2) and (a)(4).

**Facts Common to All Counts**

6. Old Republic is one of the oldest and largest national title insurance underwriters in the United States. Old Republic engages policy-issuing agents in each state in which it does business to perform title searches, issue title insurance commitments, and issue title insurance policies following recordation of deeds and/or deeds of trust executed in connection with real estate transactions.

7. Between February 15, 2009 and October 31, 2010, American Dream was in the business of performing real estate closings and acted as one of Old Republic's policy issuing agents in the State of Maryland and the District of Columbia.

8. The Debtors are/were the sole shareholders of American Dream. They were also officers and directors of American Dream and guarantors of the obligations of American Dream to Old Republic as alleged hereinafter.

### A. Old Republic and American Dream Enter into an Agreement for American Dream to Act as Old Republic's Policy Issuing Agent

9. Pursuant to the terms of a February 15, 2009 "Agreement for Appointment of Policy Issuing Agent for Old Republic National Title Insurance Company" (the "Agreement"), Old Republic appointed American Dream, and American Dream accepted such appointment, as a title insurance policy issuing agent for Old Republic for the limited purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements under which Old Republic assumed liability for the condition of title, covering real estate located in the State of Maryland and the District of Columbia. A true and correct copy of the Agreement is attached hereto as Exhibit A.

10. Pursuant to the terms of the Agreement, the Debtors individually guaranteed the full and faithful performance of American Dream's obligations under the Agreement.

11. American Dream served as a policy issuing agent of Old Republic from the date of the Agreement until October 31, 2010 (the "Term").

12. Pursuant to Section 2 of the Agreement, American Dream was *inter alia* obligated during the Term to:

> "C. Timely transmit to the appropriate public office and cause the recording of all documents necessary to insure the interests, estate or title described in the policy, and to timely issue appropriate Title Insurance Forms."
>
> "E. Assume full responsibility for the collection of all premiums, fees, and charges attributable to the issuance of Title Insurance Forms hereunder."

      and

**"F. Keep safely in a federally insured trust account separate from Agent's operating accounts all funds received by Agent in connection with transactions where Insurer's Title Insurance Forms are issued, and disburse said funds only for the purposes for which the same were entrusted, and reconcile all such accounts not less frequently than monthly. (emphasis added).**

13. Section 7(A) of the Agreement provides that American Dream was responsible for all losses incurred by Old Republic on account of title insurance related transactions handled by American Dream during the Term arising from the following:

"1. Defalcation, fraud or dishonesty on the part of Agent."

and

"2. The improper closing or attempted closing by the Agent, including but not limited to (a) loss or misapplication of customer funds, documents or other things of value received by Agent in a fiduciary capacity or otherwise, resulting in loss to Insurer, (b) failure to disburse properly or close in accordance with escrow or closing instructions, and/or (c) misappropriation of escrow or closing funds by Agent."

### B. The Parties Terminate the Agreement and American Dream's Failure to Record Land Instruments Results in Title Claims Against Old Republic

14. On October 31, 2010, Old Republic and American Dream terminated the Agreement. A copy of the termination is attached hereto and incorporated herein as <u>Exhibit B</u>.

15. Starting in late 2010, Old Republic started receiving claims from various insureds regarding properties for which American Dream had been acting as Old Republic's policy issuing agent. Old Republic learned that American Dream had not recorded deeds and/or deeds of trust, although executed and delivered by the parties with the necessary funds to do so to American Dream with instructions to promptly record them.

16.     Following termination of American Dream, Old Republic demanded access to American Dream's escrow account records, as well as all files and other records related to closings with unrecorded closing documents that American Dream handled with respect to which Old Republic had committed to issue title insurance policies.  Mrs. Watson failed to turn over to Old Republic the requested documents and claimed that her "abstractor" was in possession of all unrecorded original documents that American Dream was responsible for recording.  Mrs. Watson also claimed that there were no funds remaining in American Dream's escrow account to pay the applicable recording charges and recordation and transfer taxes, although such funds were delivered to American Dream in escrow for the sole purpose of paying such charges on behalf of the parties to the transaction.

      **C.**     **Debtors Eventually Produce Some Original Unrecorded Documents**

17.     On February 8, 2011, in response to a subsequent contact from a private investigator hired by Old Republic again requesting American Dream's files and the original documents that were not recorded in the land records, a box containing numerous unrecorded deeds and deeds of trust was delivered to Old Republic, but without the checks or funds to record them.  This box contained many documents that Mrs. Watson had previously claimed were in the possession of her abstractor.

18.     Old Republic's review of the box of documents indicated that there were at least fourteen (14) transactions for which American Dream and the Debtors failed to record the deeds and/or deeds of trust, despite agreeing to do so and despite being provided the necessary funds in escrow with which to record them.

19. Despite this evidence of wrongdoing, American Dream and the Debtors continued to refuse to produce all of American Dream's files and bank records for review and audit as required under the Agreement.

20. The failure of Defendants to produce the closing files and escrow account information, and the existence of original unrecorded deeds and/or deeds of trust for at least fourteen (14) real estate transactions, raised significant questions concerning the proper handling of escrow funds received and disbursed by American Dream, including the failure to properly record deeds and/or deeds of trust to complete the closings undertaken.

### D. Old Republic Commenced State Court Action

21. On February 16, 2011, Old Republic filed a Complaint for Damages, Injunctive and Related Ancillary Relief (the "State Court Complaint") against American Dream and the Debtors in the Circuit Court for Anne Arundel County, Maryland (the "Circuit Court"), Case No. 02C11159075 (the "State Court Case").

22. The Complaint contained the following counts: Count I (Breach of Contract) (American Dream Only); Count II (Negligence) (American Dream Only); Count III (Accounting/Audit) (All Defendants); Count IV (Fraud) (Watsons Only); Count V (Immediate and Continuing Injunctive Relief) (All Defendants); and Count VI (Breach of Guarantee Agreement) (Watsons Only).

23. On December 15, 2011, the Circuit Court entered an Order Granting Plaintiff's Motion for Partial Summary Judgment (the "Summary Judgment Order"). A true and correct copy of the Summary Judgment Order is attached hereto as Exhibit C. Pursuant to the Summary Judgment Order, judgment in the amount of $95,207.30 plus costs and post-judgment interest was entered against American Dream and in favor of Old Republic as to Count I of the State

Court Complaint. In addition, judgment in the amount of $95,207.30 plus costs and post-judgment interest was entered against the Debtors, jointly and severally, and in favor of Old Republic as to Count VI of the State Court Complaint.

24. The $95,207.30 judgment consists of (i) $55,490.95 in costs and expenses incurred by Old Republic to record the previously unrecorded deeds and deeds of trust, more fully described on the chart attached hereto as Exhibit D; and (ii) $39,716.35 in claims-related attorney's fees ($20,095.00) and attorney's fees in the State Court Case ($19,621.35) (such fees being authorized pursuant to Paragraph 19 of the Agreement).

25. Old Republic subsequently filed a motion for partial voluntary dismissal, and the Circuit Court thereafter dismissed Counts II, III, IV and V without prejudice.

26. Instead of escrowing funds and thereafter using those funds to pay the necessary filing and recordation fees totaling Fifty-Five Thousand Four Hundred Ninety Dollars and Ninety-Five Cents ($55,490.95) to properly finalize the settlements and record the title instruments, the Debtors transferred escrow funds of parties to a non-escrow account and used American Dream funds for personal expenditures, including, but not limited to, the following:

    a. Dave Y. Choi, MD, FACS – $20.00 (on 6/24/10);

    b. Sunny Nails - $12.00 (on 6/30/10);

    c. Big Vanilla - $49.31 (on 7/29/10);

    d. Anvil Campground - $94.58 (on 8/2/10);

    e. Petsmart, Inc. - $69.93 (on 8/11/10);

    f. Olney Sandy Spring Vet - $167.20 (on 8/11/10);

    g. Olney Sandy Spring Vet - $63.70 (on 8/13/10);

    h. Arbonne International - $358.60 (on 8/13/10);

    i.      Claire's Boutique - $39.22 (on 8/16/10);

    j.      Bass Pro Shops - $62.28 (on 8/16/10);

    k.     Bass Pro Shops - $66.36 (on 8/16/10);

    l.      Finish Line - $99.99 (on 8/16/10);

    m.    Foot Locker - $100.00 (on 8/16/10);

    n.     Doctor for Son - $140.00 (on 8/17/10);

    o.     Jostens - $300.00 (on 8/17/10);

    p.     Nissan Motor - $400.00 (on 8/17/10);

    q.     Cosmetic Dental Bill - $1,903.80 (on 8/17/10);

    r.      Nail Trix - $45.00 (on 8/20/10);

    s.     Hudson Trail Outfitter - $118.00 (on 8/23/10);

    t.      Mastercard Payment - $1,449.93 (on 8/23/10);

    u.     Playboy Magazine - $19.97 (on 8/30/10);

    v.     Toys R Us - $114.45 (on 9/7/10);

    w.    Glen Burnie Car Wash - $9.00 (on 9/10/10);

    x.     Olney Sandy Spring Vet - $114.65 (on 9/15/10);

    y.     Petsmart - $77.29 (on 9/20/10);

    z.     Effective Chiropractic - $40.00 (on 9/21/10);

    aa.    Nail Trix - $75.00 (on 9/21/10);

    bb.    Nissan Motor - $400.00 (on 9/21/10);

    cc.    Nail Trix - $40.00 (on 10/6/10);

    dd.    Petsmart - $6.66 (on 10/12/10);

    ee.    NYS Sunglass Wallet - $26.50 (on 10/12/10);

    ff.    Olney Sandy Spring Vet - $150.00 (on 10/13/10);

    gg.    Nissan Motor - $400.00 (on 10/13/10);

    hh.    Petsmart - $151.46 (on 10/21/10);

    ii.    Bass Pro Shops - $186.72 (on 11/1/10);

    jj.    Petsmart - $183.28 (on 11/5/10);

    kk.    Fred Meyer Jewelry - $294.46 (on 11/8/10);

    ll.    Sanders Diamond Jeweler - $871.85 (on 11/8/10);

    mm.    Pandora - $106.00 (on 11/9/10);

    nn.    Pandora - $259.70 (on 11/9/10);

    oo.    Petsmart - $46.25 (on 11/15/10);

    pp.    Petsmart - $131.31 (on 11/16/10);

    qq.    Nail Trix - $75.00 (on 11/22/10);

    rr.    Petsmart - $243.55 (on 11/29/10);

    ss.    Bass Pro Shops - $262.59 (on 11/29/10).

27. The above expenditures are reflected on the American Dream's operating account bank statements. There are other questionable expenditures on the bank statements that will be the subject of discovery in this Adversary Proceeding. Around the same time as the Debtors used funds for personal expenditures and failed to pay the necessary costs to record deeds and deeds of trust, American Dream's bank statements also reflect several large transfers of funds from American Dream's escrow account to its operating account.

28. Contrary to the obvious use of American Dream's operating account for personal expenditures, at the meeting of creditors in this case, Mrs. Watson testified under oath that the Debtors did not use any of American Dream's funds for personal expenses.

29. Many of unrecorded deeds and deeds of trust were executed at closings during the time when the aforementioned funds had been converted by the Watsons, removed from the escrow account, and were used by the Watsons for personal expenditures, instead of properly being used to pay for the necessary recording costs and to comply with the escrow instructions of the parties to such closings and the obligations to Old Republic under the Agreement.

### COUNT I (Fraud)
### 11 U.S.C. § 523(a)(2)(A)

30. Plaintiff incorporates by reference the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. By virtue of their positions with American Dream, the Debtors owed duties to Old Republic to properly administer funds delivered to them in escrow and not divert funds from American Dream for their own personal use. In addition, the Watsons had a duty to truthfully account for the funds held in escrow.

32. The Watsons continually asserted that American Dream was reconciling its escrow account and recording the proper instruments to effectuate transfers of title.

33. The Watsons further represented that American Dream only had one escrow account, all documents had either been recorded or were in the possession of the abstractor with the necessary funds to record them, and that no funds remained in American Dream's escrow account.

34. In addition, when issuing title commitments on behalf of Old Republic, the Debtors represented to Old Republic that they would properly account for funds collected at closings and record the necessary documents.

35. The Watsons knew that the representations described above were false and that American Dream had not properly recorded numerous deeds and/or deeds of trust and had not properly administered the funds delivered to them in escrow by parties to a closing.

36. Upon information and belief, the Watsons made these false assertions for the purpose of defrauding Old Republic and its insureds.

37. Old Republic justifiably relied upon the Watsons' representations that they were causing American Dream to perform its duties under the Agreement and in conformance with its duties to Old Republic and the insureds. In reliance on the Watsons' representations, Old Republic issued title insurance commitments and policies to owners and lenders.

38. As a result of the Watsons' fraudulent representations, Old Republic suffered damages, as described hereinbefore.

**WHEREFORE**, Old Republic prays that this Honorable Court determine that the judgment against the Debtors, in the amount of $95,207.30 plus costs and post-judgment interest, which was previously entered by the Circuit Court, is non-dischargeable in accordance with 11 U.S.C. § 523(a)(2)(A).

### COUNT II (Defalcation While Acting in Fiduciary Capacity)
### 11 U.S.C. § 523(a)(4)

39. Plaintiff incorporates by reference the allegations of paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Section 10-121 of the Insurance Article of the Maryland Code provides, in pertinent part, that "[a] title insurance producer may not convert or misappropriate money received or held in escrow or trust while: (1) acting as a title insurance producer; or (2) providing any escrow, closing, or settlement services."

41. Debtors were licensed title insurance providers in Maryland. In addition, as guarantors under the Agreement, the Debtors, as the parties in sole control of the American Dream escrow account, were acting in a fiduciary capacity, and owed a fiduciary duty to Old Republic and it insureds, during all relevant times.

42. The express language of the Agreement – which required American Dream to "[k]eep safely in a federally insured trust account separate from Agent's operating accounts all funds received by Agent in connection with transactions where Insurer's Title Insurance Forms are issued, **and disburse said funds only for the purposes of which the same were entrusted**…" (Agreement, Section 2F) (emphasis added) – shows an intention that American Dream and the Debtors were to segregate funds collected at closings and use them only for the benefit of Old Republic and its insureds, thereby establishing an express trust.

43. The Debtors acted improperly and recklessly when, on behalf of American Dream, they *inter alia,* conducted closings without recording deeds and deeds of trust, failed to account for and hold the necessary funds collected at closings with which to record deeds and deeds of trust and converted funds which should have been used to record deeds and deeds of trust to themselves for personal expenditures. Alternatively, the Debtors consciously disregarded their obligations as fiduciaries to Old Republic and its insureds and were willfully blind to the substantial and unjustifiable risk that their actions or inactions would violate their fiduciary duties.

44. As a result of the foregoing, Old Republic suffered damages in the amount of $95,207.30 plus costs and post-judgment interest as set forth in the Summary Judgment Order.

**WHEREFORE**, Old Republic prays that this Honorable Court determine that the judgment against the Debtors, in the amount of $95,207.30 plus costs and post-judgment interest,

which was previously entered by the Circuit Court, is non-dischargeable in accordance with 11 U.S.C. § 523(a)(4).

                Respectfully submitted,

                **SHULMAN, ROGERS, GANDAL,**
                **PORDY & ECKER, P.A.**

By:    /s/ Stephen A. Metz
        Morton A. Faller, Esquire (Bar No. 01488)
        Stephen A. Metz, Esquire (Bar No. 13720)
        12505 Park Potomac Avenue, Sixth Floor
        Potomac, Maryland 20854
        TEL:  (301) 231-0928 (Faller)
                   (301) 230-6564 (Metz)
        FAX:  (301) 230-2891
        Email: mfaller@shulmanrogers.com
                   smetz@shulmanrogers.com

*Attorneys for Old Republic National Title Insurance Company*

Dated: August 9, 2013

F: 100458.00211
4003703_1.doc