# EXHIBIT A

## AGREEMENT FOR APPOINTMENT OF POLICY ISSUING AGENT
## FOR OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

THIS AGREEMENT, made and entered into this 15th day of FEB , 200 9 , by and between Old Republic National Title Insurance Company, a Minnesota corporation (hereinafter referred to as "Insurer") and American Dream Title, Inc., a Corporation under the laws of the state of Maryland and Heather M. Guy-Watson and James Bryan Watson (hereinafter collectively referred to as "Agent") (referred to herein as "this Agreement".)

IN CONSIDERATION of the mutual benefits accruing, and subject to the terms and conditions hereof, the parties agree as follows:

### 1.    APPOINTMENT OF AGENT

Insurer appoints Agent a policy issuing agent for Insurer for the purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements under which Insurer assumes liability for the condition of title (hereinafter referred to individually as a "Title Insurance Form," or collectively as "Title Insurance Forms"), covering real estate located in the following States and counties: ALL in the State of Maryland and the District of Columbia

### 2.    AGENT'S DUTIES

Agent shall:

A.    Receive and process applications for title insurance and issue Title Insurance Forms in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of Insurer, as well as in conformity with federal, state and local laws, rules, regulations and practice;

B.    Maintain and preserve, in a separate file on each order for title insurance placed with Agent, a copy of the Title Insurance Forms issued in that transaction, and all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, survey plats, searches, examinations and work sheets;

C.    Timely transmit to the appropriate public office and cause the recording of all documents necessary to insure the interest, estate or title described in the policy, and to timely issue appropriate Title Insurance Forms.

D.    Keep safely and assume full responsibility for all Title Insurance Forms entrusted to Agent by Insurer, and maintain an accurate, updated register thereof;

E.    Assume full responsibility for the collection of all premiums, fees and charges attributable to the issuance of Title Insurance Forms hereunder;

F.    Keep safely in a federally insured trust account separate from Agent's operating accounts all funds received by Agent in connection with transactions where Insurer's Title Insurance Forms are issued, and disburse said funds only for the purposes for which the same were entrusted, and reconcile all such accounts not less frequently than monthly;

G.    Comply with all statutes and rules and regulations relating to the licensing and operation of Agent's business;

H.    Immediately notify Insurer in writing if Agent, for any reason, is unable to carry on the business of issuing Insurer's Title Insurance Forms;

I.    Immediately notify Insurer in writing if there is a change in any principal or ownership of Agent, including without limitation, any change in officers, directors, shareholders, partners, managers, associates, members or any key employees of Agent;

J.    In the event that such a change as identified in subsection I above occurs Agent shall, if requested by Insurer, promptly obtain and provide to Insurer a fully executed "Disclosure & Release of Information Authorization" by any such new principal or owner, using the form attached hereto as Exhibit B, which Exhibit is incorporated herein specifically by this reference; and

K.    Comply with all of the terms and conditions of this Agreement and all other terms and conditions of all other agreements between Agent and Insurer or between Agent and Insurer's affiliates.

L.    Comply with and follow all Bulletins, Alerts, Directives, Policies and Procedures issued by Insurer.

3.    **INSURER'S DUTIES**

Insurer shall:

A.    Furnish Agent with Title Insurance Forms and forms for the accounting of same;
B.    Furnish Agent with rules and instructions for issuing Title Insurance Forms;
C.    Determine all risk assumption questions submitted by Agent; and
D.    Comply with all statutes, rules and regulations relating to the licensing, taxation and the operation of Insurer's business.

4.    **LIMITATIONS ON AGENT'S APPOINTMENT AND AUTHORITY**

Agent shall not, without written approval from Insurer:

A.    Commit Insurer to a risk in excess of Five Hundred Thousand ($500,000.00);
B.    Commit Insurer to a risk which it has, by its rules, determined to be an extraordinary or unusual risk, or which Agent knows to be based upon a disputed title;
C.    Commit Insurer to a risk which, by its rules, instructions or manuals, requires prior approval by Insurer;
D.    Use Title Insurance Forms other than those supplied or approved by Insurer or alter any Title Insurance Forms supplied or approved by Insurer;
E.    Administer or adjust any claim of loss for which Insurer may become liable;
F.    Accept service of legal process on behalf of Insurer, unless required by state law, in which event Agent shall immediately forward to Insurer all documents served;
G.    Incur bills or debts chargeable to Insurer;
H.    Use, in any of Agent's advertising or as a part of Agent's name, the following: (1) the names or corporate seal for "Old Republic National Title Insurance Company", "Old Republic Title" or any derivative thereof; (2) the signatures of any officers of the Insurer; (3) the service mark "OR" encircled by 13 stars or any derivation thereof. In the event such written approval is obtained, Agent shall cease any and all such use immediately upon termination of this Agreement.
I.    Issue Title Insurance Forms covering any title in which Agent, its officers, directors, employees, partner or the attorney furnishing an opinion of title, have any interest, direct or indirect.

5.    **TITLE INSURANCE RATES**

A.    Insurer shall supply Agent with its title insurance rate manual or schedule for each state in which Agent is authorized to do business under this Agreement. Insurer reserves the exclusive right to change its rates from time to time, in whole or in part, and shall notify Agent of such changes. Except as allowed under subparagraph (B), Agent shall charge and collect premium according to Insurer's rate manual or schedule.

B.    In states where Insurer's rates are not filed or otherwise regulated, Agent may charge and collect premium that is not calculated according to Insurer's rate manual or schedule.

6.    **DIVISION OF PREMIUM AND REPORTING SCHEDULE**

A.    Agent shall remit to Insurer 30 percent of the title insurance premium specified in Insurer's rate manual or schedule or otherwise as permitted in Section 5(A) as Insurer's underwriting fee for its assumption of risk. If Agent issues policies in states in which rates are not promulgated or regulated, and if Agent charges and collects an amount of premium that is higher than the amount calculated according to Insurer's rate manual or schedule, the percentage amount remitted to Insurer shall be calculated on such higher amount collected; however, in no event shall the amount remitted to Insurer be less than the percentage of the premium amount calculated according to Insurer's rate manual or schedule.

B.  Insurer may require that a greater percentage of premium be remitted by Agent on certain real estate transactions, under circumstances where the Insurer is performing additional services which are commensurate to the increased percentage of premium. Under circumstances where Insurer may charge additional premium for extraordinary or unusual risks, as defined by Insurer, Agent shall not be entitled to retain any portion of any such additional premium. For purposes of calculating Agent's retention in cases where, for any reason, reinsurance is purchased by Insurer, the cost of such reinsurance shall first be deducted from the title insurance premium collected prior to the division of premium calculated according to this Section, and the amount deducted for reinsurance shall be remitted to Insurer according to subparagraph (C) of this Section.

C.  Agent shall report to Insurer, on a monthly basis, in a form approved by Insurer, all title insurance policies, endorsements and any other Title Insurance Forms that Insurer may require to be reported, which have been issued since the previous report, and attach to the report a copy of each Title Insurance Form covered by the report. Agent shall also remit to Insurer, with the above report, all amounts due Insurer under this Agreement. The report and remittance shall be due on or before the 10th day of the second month following the closing date on which Insurer's title insurance liability attached. All Title Insurance Forms submitted to Insurer as required under this Section shall become the property of Insurer.

D.  All amounts due Insurer pursuant to this Agreement shall, upon receipt by Agent, be considered the property of Insurer and shall be held in trust by Agent for the benefit of Insurer until such time said amounts are paid over to Insurer.

7.  **RESPONSIBILITY FOR LOSS**

As between Insurer and Agent, responsibility for loss (which term includes, by way of illustration and not limitation, payments to insured(s) and third parties, attorney's fees and all other costs incurred in the investigation of claims, negotiation of settlements and litigation and/or other legal proceedings, and any regulatory fines) arising from the title insurance business conducted pursuant to this Agreement, shall be as follows:

A.  Agent is responsible for losses caused by or attributed to the following:

   1.  Defalcation, fraud or dishonesty on the part of Agent ;
   2.  Intentional or negligent failure of Agent to comply with the terms and requirements of this Agreement or of the rules, regulations or instructions given to Agent by Insurer;
   3.  Intentional omission from commitments or policies of reference to encumbrances or title defects disclosed by the application, by the Agent's search and examination of title, by an approved examiner's report, or certification of title, or which were otherwise known to Agent;
   4.  The improper closing or attempted closing by the Agent, including but not limited to (a) loss or misapplication of customer funds, documents or other things of value received by Agent in a fiduciary capacity or otherwise, resulting in loss to Insurer, (b) failure to disburse properly or close in accordance with escrow or closing instructions, and/or (c) misappropriation of escrow or closing funds by Agent; and
   5.  Negligent errors or omissions in the search, or examination of title, in the preparation of Title Insurance Forms or in other procedures involved in processing an application for title insurance.

B.  Agent's responsibility for loss as set forth in Section 7 (A) shall be construed broadly to include any losses caused by the actions or inactions of: (i) Agent, any principal and/or owner of Agent, including without limitation, any officer, director, shareholder, partner, manager, associate, or member of Agent, or any employee of Agent; and (ii) the agents, sub-agents, vendors, contractors, subcontractors of Agent and/or their respective officers, directors, shareholders, employees, partners, associates and/or members (hereinafter referred to as "Subcontractors").

C.  Insurer is responsible for all other losses resulting from claims covered under Insurer's Title Insurance Forms issued by Agent.

D.   Insurer shall have the exclusive right to adjust, pay or compromise all claims (including those claims for which Agent is liable) and the sole discretion to commence, defend against or settle legal proceedings in connection therewith.  If Insurer incurs expenses or pays a claim of loss for which Agent is responsible, Agent agrees to reimburse Insurer for such amounts on demand.  Insurer shall have the right of setoff for such amounts.  Agent shall promptly submit a claim to its E&O carrier when directed to do so by Insurer.

8.   **PREPARATION OF POLICIES AND COMMITMENTS**

A.   Agent shall show as exceptions to coverage all defects, liens and encumbrances, including but not limited to taxes, restrictions, easements and any other matters which affect the validity and/or marketability, or insurability of the title being insured, of which the Agent has knowledge or notice, including those matters disclosed by a proper search of the records, an opinion of title or an inspection or survey of the insured land.

B.   Agent shall specifically identify the Insurer as its underwriter on the commitment at the time it is created or issued.

9.   **CLAIMS**

If a claim is made to Agent under any of Insurer's Title Insurance Forms which Agent has issued or if Agent becomes aware of any circumstances which may give rise to a claim under any such exposure, Agent agrees to immediately notify Insurer at its office at 400 Second Avenue South, Minneapolis, Minnesota, 55401 (Attn: Claims Department).  Agent shall provide all reasonable assistance to, and shall cooperate with, Insurer in investigating, adjusting or contesting said claim.  Unless expressly authorized by Insurer, Agent shall not administer any claim, nor make any attempt to investigate, accept or deny any claim, or settle or refer the claim to outside counsel.  Agent shall make any file documents necessary to administer such claim available to Insurer.

10.   **INSURANCE**

A.   Agent shall obtain and keep in full force and effect for so long as Agent has liability to Insurer under the terms of this Agreement, the following :

1.   A comprehensive liability insurance policy for errors and omissions (hereafter referred to as "E & O") in an amount of at least Five Hundred Thousand dollars ($500,000) in a form and issued by a company acceptable to Insurer.  Agent shall furnish to Insurer a copy of the policy, including all endorsements, and a copy of proof of payment of the current premium.  This comprehensive liability policy may have a deductible of no more than Five Thousand dollars ($5,000) per loss.

Although the relationship created by this Agreement does not extend to any escrow, closing or settlement or other services that do not involve Insurer's assumption of liability for the condition of title, the above-described insurance policy shall include coverage for any such escrow and closing services Agent may provide for others.

2.   A fidelity bond of at least $100,000 and a surety bond of at least $100,000, both in a form and issued by a company acceptable to Insurer.  If Agent, or any principal and/or owner of Agent, including without limitation, any officer, director, shareholder, partner, manager, associate manager, member or any employee of Agent, or any Subcontractor of Agent, has access to escrow accounts, or money that may be entrusted to any of the aforementioned, by Insurer or others in the course of Agent's operations hereunder, then each such individual must either have a separate Fidelity-Type Bond to cover any fraudulent or dishonest act, or such person or persons may be covered by a blanket Fidelity-Type Bond, provided that $100,000 of protection is maintained for each individual person.

3.   At any time during the term of this Agreement, Insurer shall have the right to require, and Agent shall promptly furnish to Insurer, evidence (satisfactory to Insurer) of compliance with this Section 10, including but not limited to evidence of renewals of all required coverage.

4.   If state or other local law requires coverage that is greater than or in addition to the requirements of this section, then such greater or additional coverage shall be obtained by Agent.

B.   Agent authorizes Insurer to submit notices of claims to Agent's E&O and bond carriers on Agent's behalf.

C.   Agent shall immediately notify Insurer in writing if Agent's insurance coverage is cancelled or if coverage is changed.

## 11.   AUDITS AND CREDIT INVESTIGATIONS

Agent hereby agrees and authorizes Insurer, at Insurer's option:

A.   To conduct, or have conducted periodic audits of Agent's policy inventory, title insurance files and any material, files, records or accounts, including financial and business records, relating to the issuance of Title Insurance Forms.  In addition, although it is agreed that any escrow or settlement business responsibility is strictly that of Agent, it is recognized that because the Insurer issues closing protection letters which cause Insurer to indemnify third parties against loss resulting from Agent's errors, omissions or misconduct (and for which Agent acknowledges total liability), Agent does hereby grant Insurer the right at any reasonable time or times to audit all financial and business records relating to any escrow closing or settlement functions conducted by Agent;

B.   To obtain periodic credit reports and criminal background reports on Agent, as well as investigations relative to the business, professional and personal reputation, character, personal characteristics and mode of living of Agent.   These matters may include matters in the nature of an investigative consumer report as defined by the Federal Fair Credit Reporting Act.

## 12.   ESCROWS AND OTHER BUSINESS OF AGENT

A.   The relationship created by this Agreement does not extend to (1) any escrow, closing or settlement business (hereinafter referred to as "Escrow Business") conducted by Agent and/or Agent's Principals, employees or Subcontractors; (2) title reports, opinions or certificates issued in the name of Agent or (3) to any other activity of Agent and/or Agent's Principals, employees or Subcontractors that does not involve the Insurer's assumption of liability for the condition of title.

B.   Agent agrees not to receive nor receipt for any fund, including escrow funds, in the name of Insurer but, rather, shall receive and receipt for funds, including escrow funds, for its own account. Agent further agrees to maintain adequate records, as may be required by Insurer, as to any escrow and closing funds being handled by Agent in transactions in which Insurer's Title Insurance Forms are issued, and to keep all such funds properly segregated in a trust or escrow account in a federally insured institution, or as otherwise required by state law.

## 13.   CLOSING PROTECTION LETTERS

Insurer may from time to time, as an accommodation to Agent in the promotion of Agent's title insurance agency business, issue a closing protection letter (CPL) to a prospective insured or other party to a real estate transaction being processed by Agent and/or its Subcontractors, the effect of which is to bind Insurer to indemnify the addressee thereof against loss resulting from that Agent's and/or its Subcontractor's errors, omissions or misconduct in acting as the escrow, closing or settlement agent for the parties to the transaction, under the terms and conditions stated in the CPL.

A.   Insurer has developed and maintains an automated system to facilitate the uniform use and distribution of approved standard form CPLs.  Except as provided in subsection (B) below, Agent agrees that it will use Insurer's automated system to obtain the standard form CPL in all instances where Agent will be issuing a policy of title insurance on behalf of Insurer.

B.   The exclusive and uniform use of the automated system to obtain CPLs would not be practical or efficient in states that require issuance of letters on individual transactions and a payment of a fee for each transaction on which a CPL is issued. Currently those states are New Jersey, Pennsylvania, Nebraska and North Carolina. When issuing a CPL in those states (and any other states which may hereafter require CPLs on individual transactions) Agent may duplicate and issue Insurer's promulgated and approved standard form CPLs on Agent's own computer software system; provided that (1) prior to issuing any such CPL, Agent provides to Insurer a copy of the template that Agent will use to produce any CPLs; and (2) Agent submits a detailed report and remits all applicable fees to Insurer each month, listing every CPL issued from Agent's system.

C.   In the event Insurer makes payment of a claim arising from matters covered by a CPL, Agent shall promptly, without offset, reimburse Insurer for the full amount of Insurer's loss, as defined herein. Insurer shall have sole and exclusive discretion to compromise and settle any claim asserted against Insurer without prejudice to Insurer's right to full reimbursement, and without release or waiver of Agent's obligations to reimburse Insurer.

D.   In the event that Agent violates the provisions set forth herein and/or otherwise improperly issues a CPL, including but not limited to altering the standard form CPL from the automated system or issuing a CPL in a state where Agent is not licensed to conduct business, then Agent shall be responsible for and shall indemnify without offset Insurer for all loss arising from the escrow transaction(s) and any corresponding title insurance business conducted under the auspices of any improperly issued CPL. Further, any such violation may result in the termination of this Agreement.

E.   As used herein, the term "loss" shall mean payments to insureds and to third parties and shall include attorneys fees, and amounts expended in payment for the investigation of claims, regulatory fines or penalties, expert witnesses fees, litigation or other legal proceedings costs and settlement negotiation and payments.

F.   The term "Agent" under this Section 13 shall be construed to include (i) Agent, any principal and/or owner of Agent, including without limitation, any officer, director, shareholder, partner, manager, associate, or member of Agent, or any employee of Agent; , and (ii) Agent's Subcontractors, and agent's responsibility for loss as set forth in this Section 13 shall be construed broadly to include any losses caused by the actions or inactions of any or all of the aforementioned under (i) and (ii)..

## 14.   TERMINATION OF AGREEMENT

A.   Either party hereto may terminate this Agreement by providing the other party 30 days' written notice of termination. Notice shall be given as provided at Section 23 of this Agreement.

B.   In the event of a material breach of this Agreement by either party hereto, the other party may terminate this Agreement effective immediately by giving written notice to the party committing such breach.

Material breach on the part of the Agent includes, by way of illustration and not limitation:

1.   Agent's material deviation from any term of this Agreement, or any directive promulgated by the Insurer and furnished to Agent;

2.   Agent's failure to: (a) promptly pay amounts due Insurer; (b) promptly report when due Issued Title Insurance Forms; (c) report a shortage in Agent's accounts of funds entrusted to it by Insurer or others; (d) comply with Section 10 herein; (e) notify Insurer of any changes in Agent, pursuant to Section 2 (I) of this Agreement; (f) comply with Section 13 of this Agreement; or (g) timely record all instruments referred to at Section 2 (C) of this Agreement;

3.   Agent, or any principal and/or owner of Agent, including without limitation, any officer, director, shareholder, partner, manager, associate, or member of Agent, or any employee of Agent, is involved in any act of fraud, dishonesty, misconduct or unethical behavior.

    4.    Agent's assignment of this Agreement without Insurer's consent; or

    5.    Agent's filing a petition or being adjudged bankrupt or insolvent, under any federal or state bankruptcy or insolvency law.

C.    If during the term of this Agreement, because of death or disability, or for any other reason, Agent is unable to carry on the business of issuing Insurer's Title Insurance Forms, Insurer may cancel this Agreement by giving thirty (30) days written notice to Agent.

D.    Consequences of Termination

    1.    Agent to Account.  If this Agreement is terminated, Agent shall immediately provide Insurer with a complete written accounting of all remittances due under this Agreement and of all Title Insurance Forms furnished by Insurer to Agent and deliver to Insurer all such forms and all files kept pursuant to Section 2(B) above relating to Insurer's Title Insurance Forms. Insurer shall have the right of immediate, multiple and unrestricted access to all files kept pursuant to Section 2(B), and Insurer's audit rights under this Agreement shall survive such termination.  Agent shall promptly return all unused Title Insurance Forms to Insurer.

    2.    Insurer's Right to Access Agent's Records.  In the event of any litigation, or the threat thereof, which does or could result in the assertion of or any actual claim of loss under any provision of this Agreement or under any Title Insurance Form issued hereunder, Insurer shall have the right to make an examination of Agent's pertinent books, records, data, in whatever form ("Records") as Insurer may deem advisable or necessary, while this Agreement is in effect or after this Agreement has been terminated. Agent shall keep all of its Records intact, and Agent, upon the request of Insurer, shall assist Insurer in accessing any and all such Records.

    3.    Title Insurance Forms.  Agent and Insurer recognize and agree that all Title Insurance Forms entrusted to Agent by Insurer are and shall remain the property of Insurer at all times during the term of this Agreement and following its termination.

    4.    Rights, Duties, Obligations & Remedies.  The rights, duties, obligations and remedies of the parties hereto, as set forth in this Agreement, accruing prior to, and/or because of, any such termination shall survive the termination of this Agreement.  The parties hereto shall be entitled to seek all remedies, legal and equitable, available under all applicable state or federal law (their respective case law, statutory and regulatory laws of whatever nature) for the enforcement of any or all of said rights, duties and obligations, during the term of this Agreement and/or after its termination.

## 15.    REPRESENTATIONS, WARRANTIES AND VALIDATING OFFICERS

Agent hereby represents and warrants that Agent is duly organized, validly existing and in good standing in accordance with the laws of the state under which it was organized; and the individual(s) executing this Agreement has (have) been properly authorized to do so.

Agent's Validating Officers are listed on attached Exhibit A, which Exhibit is incorporated herein by this reference.

## 16.    WAIVER AND FUTURE COMPLIANCE

A waiver of any provisions of this Agreement by Insurer or Agent shall not be construed to be a waiver of compliance with such provision in the future.

17.    SEVERABILITY

If any provision of this Agreement is held to be illegal, invalid or unenforceable under any law, the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by any such severance.

18.    ASSIGNMENT

A.    This Agreement is not assignable by Agent, except upon written consent of Insurer. Insurer may assign without the consent of Agent. In case of any assignment, this Agreement shall be binding upon and inures to the benefit of the parties hereto, and any authorized successors and assigns.

B.    If, at any time during the term of this Agreement, there shall occur any change in the ownership of Agent, including without limitation, any change in officers, directors, shareholders, partners, managers, associates, members or any key employees of Agent,, such change may be considered, at Insurer's option, as an Assignment under this Section and under Section 14 (B) 4.

19.    ATTORNEY'S FEES AND COSTS

In any litigation or other legal proceedings by and between the parties to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and court and other costs from the non-prevailing party related to any such litigation or other legal proceedings.

20.    CONFIDENTIALITY

The parties agree that neither will, without the prior written consent of the other, use, divulge, disclose or make accessible to any other person, firm, partnership or corporation, any Confidential Information, as hereinafter defined, except when required to do so by law, provided, however, that in the case of any such requirement, such party shall provide written notice to the other at least 10 days prior to producing such Confidential Information. For purposes of this agreement, "Confidential Information" shall mean all non-public information concerning the business of the party which has value to the party and is not generally known to competitors, including, by way of illustration and without limitation, information relating to its financial products, product development, customer lists, business and marketing plans and strategies, and operating policies and manuals, except for items which become publicly available information other than through a breach by either party of its duty hereunder.

21.    CONSENT TO JURISDICTION – WAIVER OF JURY TRIAL.

At the option of Insurer, this Agreement may be enforced in any Minnesota state court or federal court sitting in Hennepin County, Minnesota. Agent consents to the jurisdiction and venue of any such court and waives any defense that venue in such forums is not convenient.

Agent and Insurer, by their acceptance of this Agreement, irrevocably waive any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement.

22.    GOVERNING LAW

The validity, construction and enforceability of this Agreement shall be governed by the laws of the state of Minnesota; provided, however, that no effect shall be given to Conflicts of Laws principles of the state of Minnesota.

23.    NOTICES

Any notice or other communication required or permitted to be given or made by either party to the other under this Agreement, or pursuant to any applicable law, shall be in writing (whether or not so stated elsewhere in this Agreement) and shall be deemed to have been properly given or made, if sent by either registered or certified United States mail, return receipt requested, postage prepaid, or by overnight delivery by any nationally recognized overnight delivery service, as follows:

1. To Insurer:  Old Republic National Title Insurance Company
   c/o Herbert R. Walton
   Three Glenhardie Corporate Center
   1265 Drummers Lane, Suite 220
   Wayne, PA  19087

2. To Agent:  American Dream Title, Inc.
   c/o Heather M. Guy-Watson
   7801 Waterview Drive
   Orchard Beach, MD  21226

All such notices shall be deemed to have been given or made on the expiration of three (3) business days after U. S. mailing or overnight delivery.  Either party may designate a different address for notices, by providing the other party written notice of such change.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed on the day and year above written.

AGENT:  AMERICAN DREAM TITLE, INC.

By: _____     Date: _2/15/09_
    Heather M. Guy-Watson, President
By: _____
    Heather M. Guy-Watson, Individually

By: _____     Date: _2/15/09_
    James Bryan Watson, Senior Executive
By: _____
    James Bryan Watson, Individually

INSURER:  OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

By _____     Date: _2/15/09_
    Herbert R. Walton

Its: _____Senior Vice President_____

## EXHIBIT A

Agent's Validating Officers are:

Name:  Heather M. Guy-Watson

Street Address:    7801 Waterview Drive
                   Orchard Beach, MD  21226

E-mail Address:   heatherguy75@hotmail.com

Telephone Numbers:

Business (Land):  410-255-8484
Mobile :
Other: _____

Name:

Street Address:

E-mail Address:

Telephone Numbers:

Business (Land):
Mobile :
Other: _____

Name:

Street Address:

E-mail Address:

Telephone Numbers:

Business (Land):
Mobile :
Other: _____

Agency Agreement Policy Issuing
Standard K -- Final May 2006 - MD

Exhibit B
TO
AGREEMENT FOR APPOINTMENT OF POLICY-ISSUING AGENT
FOR OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

## DISCLOSURE & RELEASE OF INFORMATION AUTHORIZATION

[Name of individual-applicant] _____ ("Individual-Applicant") is the
_____ of _____, a _____ under the laws of
_____, ("Proposed Agent") is applying on behalf of the Proposed Agent, to be
appointed as a Policy-Issuing Agent of Old Republic National Title Insurance Co. (the "ORT")

The Individual-Applicant is the subject of this disclosure and authorization, and is referred to herein as "I,"
"My," "Me," "You," "Your," or "Yours".

The Federal Fair Credit Reporting Act is referred to as "FCRA."

### Disclosure

Subject to Your written authorization, this is notice to You that ORT may procure a written, oral or other
communication containing information by a consumer reporting agency, bearing on Your individual credit
worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode
of living, which will be used or is expected to be used or collected in whole or in part for the purpose of
serving as a factor in establishing the eligibility of Applicant being appointed as a Policy-Issuing Agent of
ORT.

In lieu thereof or in addition thereto, an "investigative consumer report" may be procured, which is defined
under FCRA as including information on Your character, general reputation, personal characteristics, or
mode of living, obtained through personal interviews with neighbors, friends or associates of Yours
reported on or with others with whom You are acquainted or who may have knowledge concerning any
such items of information.

You may request a copy of any such report that is prepared and You may also request the nature and
substance of all information on You that is contained in the files of the consumer reporting agency. To
receive the information, You must provide proper identification as required under FCRA. You should
direct Your request to Old Republic Credit Services, 8 Harris Court Bldg., A Suite 2, Monterey, CA
93940. Telephone # is 888-895-5145 or 831-655-6797.

_____
Individual's Initials

### Written Authorization

I understand that ORT may not obtain any consumer report on Me without My consent in writing. I hereby authorize ORT and Old Republic Credit Services, a consumer reporting agency, to retrieve (both pre-application and during the agency relationship with ORT, if appointed) information from all personnel, educational institutions, government agencies, companies, corporations, consumer credit reporting agencies, law enforcement agencies at the federal, state, county or city level, workers' compensation agencies or individuals, relating to My past activities, to supply any and all information concerning My background. The information received may include, but is not limited to, records regarding My academic, residential, and job performance histories, business activities, involvement in litigation, personal history, credit reports, driving history and criminal history records. I hereby authorize ORT to disclose any such information obtained to other Principals of the Proposed Agent. I understand and agree that My authorization is a continual authorization, in that it shall continue to be in effect during this application period and for the duration of any Agency Agreement entered into between ORT and the Applicant, their respective successors and assigns.

I hereby release any individual or institution, including its officers, employees, or related personnel, both individually and collectively, from any and all liability for damages of whatever kind, which may result to Me because of compliance with this authorization and request to release information or any attempt to comply with it. I hereby agree that an electronic, photocopy or facsimiled copy of My authorization with an electronic, photocopy or facsimile copy of My signature shall be deemed as binding, valid, genuine and authentic as an original authorization and signature for all purposes.

| Print Name | Signature | Date |
|---|---|---|

**Note: The following is provided voluntarily and is not considered a part of the application for Agency. It is used for identification purposes in verifying information and obtaining the information described above:** *PLEASE PRINT CLEARLY*

| Last Name | First Name | MI | Social Security # |
|---|---|---|---|

| Street Address | City | State | Zip Code |
|---|---|---|---|

| Drivers License No. | State of License | Expires On | Date of Birth |
|---|---|---|---|

List any other NAMES you have used and any CITIES and STATES in which you lived during the past 7 years. [Attach additional pages if necessary.]

# EXHIBIT B

## MUTUAL TERMINATION AGREEMENT

THIS AGREEMENT, made and entered into this 3/st day of Oct, 2010 by and between Old Republic National Title Insurance Company and American Dream Title, Inc:

THE PARTIES HERETO hereby mutually agree to the termination of the Agreement for Appointment of Policy-Writing Agent for Old Republic National Title Insurance Company dated the 15th day of February, 2009 by and between Old Republic National Title Insurance Company and American Dream Title, Inc. Any obligations of which are to survive the termination of the contract shall continue in full force and effect.

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**

By: _____
Herbert R. Walton
Senior Vice President

**AMERICAN DREAM TITLE, INC.**

By: _____
Heather M. Guy-Watson, President

By: _____
Heather M. Guy-Watson, Individually

By: _____
James Bryan Watson, Senior Executive

By: _____
James Bryan Watson, Individually

# EXHIBIT C



4102222103



## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

Old Republic National Title Insurance Company,   )
)
        Plaintiff                 )
)
     v.                      )     Case No.: 02-C-11159075
)
American Dream Title, Inc. *et al.*       )
)
        Defendants.         )
)

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

UPON CONSIDERATION of Plaintiff's Motion for Partial Summary Judgment, any

Opposition thereto, and any argument of counsel heard, the Court finding good cause to grant

this Motion, it is by the Circuit Court for Anne Arundel County, Maryland on this *15ᵗ* day of

_____, 2011 hereby:

    ORDERED, that Plaintiff's Motion for Partial Summary Judgment be, and is hereby,

granted; and it is further

    ORDERED, that judgment is awarded to Plaintiff Old Republic National Title Insurance

Company, and against Defendant American Dream Title, Inc. as to Count I (breach of contract)

of Plaintiffs' Complaint in the amount of Ninety-Five Thousand Two Hundred Seven Dollars

and Thirty Cents ($95,207.30) plus costs and post-judgment interest; and it is further

    ORDERED, that judgment is awarded to Plaintiff Old Republic National Title Insurance

Company, and against Defendants Heather M. Watson and James B. Watson, jointly and

2011 DEC 15  P 4:31

4102222103

severally, as to Count VI (breach of guarantee agreement) of Plaintiffs' Complaint in the amount of Ninety-Five Thousand Two Hundred Seven Dollars and Thirty Cents ($95, 207.30) plus costs and post-judgment interest.

_____
JUDGE, Circuit Court for Anne Arundel
County, Maryland

### Copies to:

Jeremy W. Schulman
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854

American Dream Title, Inc.
7801 Waterview Drive
Orchard Beach, Maryland 21226

Heather M. Watson, *pro se*
7801 Waterview Drive
Orchard Beach, Maryland 21226

James B. Watson, *pro se.*
7801 Waterview Drive
Orchard Beach, Maryland 21226

# EXHIBIT D

# American Dream Title, Inc.
## Claim No. 169418

| | CASE NAME | RECORDING COSTS |
|---|---|---|
| 1. | ADT File 09-1297<br>Seller: Abrams<br>Purchaser: Suber and Stokes<br>Date of Closing: 12/22/09<br>SRGPE File No. 100458.00205<br><br>3/23/11 – Sent Suber/Stokes original Leasehold Assignment and Merger Deed.<br><br>3/23/11 – Sent Century Lending original Deed of Trust. | Transfer Deed from Abrams to Suber/Stokes - recorded on 2-3-2011<br><br>Deed and Deed of Trust charges:<br><br>$922.50 – payable to Circuit Court (filing fees, state recordation and transfer taxes)<br>$945.00 – Baltimore City Transfer Tax<br>$400.45 – Water bill<br>$417.86 – Water bill<br>$125.00 – Recording fee<br><br>Merger (Ground Rent) Deed charges:<br><br>$1,500.00 – payable to Miriam Winder Kelly (ground rent redemption)<br>$    22.50 – payable to Director of Finance (City Transfer Tax)<br>$    15.00 – payable to Circuit Court for Balt. City (Rec. Tax)<br>$      7.50 - payable to Circuit Court for Balt. City (State T.T.)<br>$    40.00 – payable to Circuit Court for Balt. City (Rec. Fee)<br>$  100.00 – recording fee to recorder<br><br>**$4,495.81 – total costs and recording** |
| 2. | ADT File 10-1300<br>Seller: Singh **(410) 351-5240**<br>Purchaser: Ruffin<br>Date of Closing: 1/15/10<br>SRGPE File No. 100458.00206<br><br>3/15/11 – Sent Ruffin original Deed.<br><br>3/15/11 – Sent Century Lending original Deed of Trust. | $1,275.00 – payable to Director of Finance (City Transfer Tax)<br>$  850.00 – payable to Circuit Court for Balt. City (Rec. Tax)<br>$  425.00 - payable to Circuit Court for Balt. City (State T.T.)<br>$    80.00 – payable to Circuit Court for Balt. City (Rec. Fee)<br>$  100.00 - recording fee to recorder<br>$  180.00 – payable to City of Baltimore (Environmental fine)<br>$  100.00 – payable to City of Baltimore (Environmental fine)<br>$  143.00 – payable to Director of Finance (PRP Registration)<br><br>**$3,153.00** - total recording (not including lien certificate fee)<br><br>Consideration = $85,000.00 (Deed) |
| 3. | ADT File 09-1285<br>Seller: East Baltimore Development<br>Purchaser: Samuels **(443) 416-5557** and Brownley<br>Date of Closing: 11/30/09<br>SRGPE File No. 100458.00207<br><br>3/15/11 – Sent Samuels/ Brownley original Deed.<br><br>3/15/11 – Sent Century Lending Company original Deed of Trust. | $2,100.00 – payable to Director of Finance (City Transfer Tax)<br>$1,400.00 – payable to Circuit Court for Balt. City (Rec. Tax)<br>$  700.00 - payable to Circuit Court for Balt. City (State T.T.)<br>$    80.00 – payable to Circuit Court for Balt. City (Rec. Fee)<br>$  100.00 – recording fee to recorder<br>$  176.00 – payable to Director of Finance (PRP Registration)<br>$  300.00 – payable to City of Baltimore (Environmental Fine)<br>$  918.60 – payable to City of Baltimore (Water Bill)<br><br>**$5,774.60** - total recording (not including lien certificate fee);<br><br>Consideration = $140,000.00 (Deed) |

# American Dream Title, Inc.
## Claim No. 169418

| | CASE NAME | RECORDING COSTS |
|---|---|---|
| 4. | ADT File 09-1258<br>Seller: East Baltimore Development<br>And Dominion Properties<br>Purchaser: 199 Allstars<br>Date of Closing: 6/26/09<br>SRGPE File No. 100458.00208<br><br>3/16/11 – Sent Dominion Financial Services original Purchase Money/First Lien Mortgage and Assignment of Rents and Leases.<br><br>3/16/11 – Sent Michael Jack, owner's counsel, original Deed. | $   748.50 – payable to Director of Finance (City Transfer Tax)<br>$1,300.00 – payable to Circuit Court for Balt. City (Rec. Tax)<br>$   249.50 - payable to Circuit Court for Balt. City (State T.T.)<br>$     95.00 – payable to Circuit Court for Balt. City (DOT)<br>$     40.00 – payable to Circuit Court for Balt. City (Assign.)<br>$     40.00 – payable to Circuit Court for Balt. City (Deed)<br>$   100.00 – recording fee to recorder<br>$   247.92 – payable to City of Baltimore (Water Bill)<br>$   244.83 – payable to City of Baltimore (Bill #6116875)<br>$   220.82 – payable to City of Baltimore (Bill #6190185)<br>$     79.74 – payable to City of Baltimore (Property Taxes)<br>$     96.42 – payable to City of Baltimore (Property Taxes)<br><br>**$3,462.73**- total recording (not including lien certificate fee)<br><br>Consideration = $49,900.00 (Deed) |
| 5. | ADT File 10-1314<br>Seller: Hamer<br>Purchaser: Perry<br>Date of Closing: 8/9/10<br>SRGPE File No. 100458.00209<br><br>3/7/11 – Sent Perry original Deed.<br><br>3/7/11 – Sent to Bank of America Home Loans original Purchase Money Deed of Trust. | $   950.00 – payable to Clerk of the Court (State Transfer Tax)<br>$1,900.00 – payable to The Commissioners of Carroll Co (Rec. Tax)<br>$     40.00 – payable to Clerk of the Court (Deed)<br>$     40.00 – payable to Clerk of the Court (Deed of Trust)<br>$   100.00 – recording fee to recorder<br>$     40.00 – lien certificate fee<br>$   847.53 – homeowner's tax credit recapture (payable to<br>                    The Commissioners of Carroll County)<br><br>**$3,917.53** - total recording (includes all recording fees/charges)<br><br>Consideration = $190,000.00 (Deed) |
| 6. | ADT File 10-1310<br>Sellers: Jones and Honeycutt<br>Purchaser: Nenette Juarez<br>Broker: Eric McPhee<br>(410) 804-8432<br>Date of Closing: 6/4/10<br>SRGPE File No. 100458.00210<br><br>3/21/11 – Sent Juarez original Deed.<br><br>3/21/11 – Sent Bank of America Home Loans original Purchase Money Deed of Trust. | $3,225.00 – payable to Bal Co, MD (Co Transfer Tax – sep ck)<br>$1,185.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$   592.50 - payable to Clerk of the Circuit Court (State T.T.)<br>$     40.00 – payable to Clerk of the Circuit Court (Deed)<br>$     40.00 – payable to Clerk of the Circuit Court (DOT)<br>$   100.00 – recording fee to recorder<br><br>**$5,182.50** - total recording (not including lien certificate fee)<br><br>Consideration = $237,000.00  (Deed) |

# American Dream Title, Inc.

### Claim No. 169418

| | CASE NAME | RECORDING COSTS |
|---|---|---|
| 7. | ADT File 10-1316<br>Sellers: Lepito and Dean<br>Purchaser: Calacal<br>Broker: Tony Mgliaccio<br>(410) 977-0606<br>Date of Closing: 6/30/10<br>SRGPE File No. 100458.00213<br><br>3/23/11 – Sent Calacal original Deed.<br><br>3/23/11 – Sent Bank of America Home Loans original Deed of Trust. | $3,270.00 – payable to Bal Co, MD (Co Transfer Tax -- sep ck)<br>$1,200.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$    600.00 - payable to Clerk of the Circuit Court (State T.T.)<br>$      40.00 – payable to Clerk of the Circuit Court (Deed)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br>$      50.00 – recorder fee<br><br>**$5,300.00** - total recording (not including lien certificate fee)<br><br>Consideration = $240,000.00 (Deed) |
| 8. | ADT File 10-1308<br>Seller: Rogers<br>Purchaser: Lapa<br>Mike Sher<br>(son-in-law to Rogers)<br>(678) 445-4926 (Ext. 19)<br>Date of Closing: 6/8/10<br>SRGPE File No. 100458.00214 | $2,595.00 – payable to Bal Co, MD (Co Transfer Tax – sep ck)<br>$    975.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$    487.50 - payable to Clerk of the Circuit Court (State T.T.)<br>$      40.00 – payable to Clerk of the Circuit Court (Deed)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$      20.00 - payable to Clerk of the Circuit Court (POA)<br>$    100.00 – recording fee to recorder<br><br>**$4,257.50** - total recording (not including lien certificate fee)<br><br>Consideration = $195,000.00 (Deed) |
| 9. | ADT File 10-1315<br>Seller: Jiang<br>Purchaser: Ramacho<br>Date of Closing: 8/6/10<br>SRGPE File No. 100458.00215<br><br>3/23/11 – Sent Ramacho original Deed.<br><br>3/23/11 – Sent Bank of America Home Loans original Purchase Money Deed of Trust. | $3,270.00 – payable to Bal Co, MD (Co Transfer Tax – sep ck)<br>$ 1,200.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$    600.00 - payable to Clerk of the Circuit Court (State T.T.)<br>$      40.00 – payable to Clerk of the Circuit Court (Deed)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br><br>**$5,250.00** - total recording (not including lien certificate fee)<br><br>Consideration = $240,000.00 (Deed) |

# American Dream Title, Inc.
Claim No. 169418

| | CASE NAME | RECORDING COSTS |
|---|---|---|
| 10. | ADT File 10-1309<br>Seller: Sniadach<br>Purchaser: Arlinie Antiqueno (443) 600-8277 (phone)<br>Attorney for seller (Sniadach) is Scott Breza<br>(443) 632-0321 (ext. 312)<br>Date of Closing: 5/27/10<br>SRGPE File No. 100458.00216<br><br>3/15/11 – Sent Antiqueno original Deed.<br><br>3/15/11 – Sent Bank of America Home Loans original Purchase Money Deed of Trust. | $2,368.50 – payable to Bal Co, MD (Co Transfer Tax – sep ck)<br>$    900.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$    449.75 - payable to Clerk of the Circuit Court (State T.T.)<br>$      40.00 – payable to Clerk of the Circuit Court (Deed)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br><br>**$3,898.25** - total recording (not including lien certificate fee)<br><br>Consideration = $179,900.00  (Deed) |
| 11. | ADT File 10-1318 (REFI)<br>Borrower: Branch<br>Date of Closing: 9/24/10<br>SRGPE File No. 100458.00217<br><br>3/15/11 – Original Deed of Trust went to Cardinal Financial Company, LP. | $ 3,304.03 – payable to Prince George's Co, MD (Co. T.T.)<br>$ 1,182.50 – payable to Prince George's Co, MD (Rec. Tax)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br><br>**$4,626.53** - total recording<br><br>Consideration = $236,002.00  (Deed of Trust) |
| 12. | ADT File 10-1321<br>Seller: Principe<br>Purchaser: Rinon<br>Date of Closing: 10/28/10<br>SRGPE File No. 100458.00224<br><br>3/22/11 – Sent Rinon original Deed.<br><br>3/22/11 – Sent Wells Fargo original Deed of Trust. | $3,345.00 – payable to Bal Co, MD (Co Transfer Tax – sep ck)<br>$ 1,115.00 – payable to Bal Co, MD (Rec. Tax -- sep ck)<br>$ 1,115.00 - payable to Clerk of the Circuit Court (State T.T.)<br>$      20.00 – payable to Clerk of the Circuit Court (POA)<br>$      40.00 – payable to Clerk of the Circuit Court (Deed)<br>$      95.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br><br>**$5,830.00** - total recording (not including lien certificate fee)<br><br>Consideration = $223,000.00  (Deed) |
| 13. | ADT File 10-1304 (REFI)<br>Borrower: Zeisel<br>Date of Closing: 4/2/10<br>SRGPE File No. 100458.00223<br><br>3/15/11 – Sent Bank of America original Deed of Trust. | $      15.00 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$      40.00 – payable to Clerk of the Circuit Court (DOT)<br>$    100.00 – recording fee to recorder<br><br>**$    155.00** - total recording<br><br>Consideration = $237,137.00  (Deed of Trust) |

# American Dream Title, Inc.
### Claim No. 169418

| | CASE NAME | RECORDING COSTS |
|---|---|---|
| 14. | ADT File 10-1305 (REFI)<br>Borrower: Floyd<br>Date of Closing: 4/19/10<br>SRGPE File No. 100458.00222<br><br>3/15/11 – Sent Primary Residential<br>Mortgage original Refinance Deed of<br>Trust. | $     47.50 – payable to Bal Co, MD (Rec. Tax – sep ck)<br>$     40.00 – payable to Clerk of the Circuit Court (DOT)<br>$   100.00 – recording fee to recorder<br><br>**$   187.50** - total recording<br><br>Consideration = $263,786.00  (Deed of Trust) |

Total recording costs recording (not including lien certificate fees) = **$55,490.95**